IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**NATIONWIDE MUTUAL FIRE**
**INSURANCE COMPANY,**

    Plaintiff,

**v.**                                                **CIVIL ACTION NO. 3:12-CV-4**
                                                          **(JUDGE GROH)**

**BOYD S. FAIRCLOTH;**
**TONY M. ELLIOT;**
**MICHELLE J. ELLIOT; and**
**ALLEN W. ELLIOT, SR.,**

    Defendants.

## AMENDED ORDER GRANTING DEFENDANTS' MOTION TO REVISE ORDER

### I. Introduction

The Motion to Revise Order [Doc. 61] of Defendants Tony M. Elliot, Michelle J. Elliot, and Allen W. Elliot, Sr. is pending before the Court. On May 3, 2013, this Court conducted a hearing with regard to the motion. Defendants appeared by counsel, Wm. Richard McCune, Jr., and Alex A. Tsiatsos. Plaintiff Nationwide appeared by counsel, Tammy R. Harvey and Thomas V. Flaherty. Having reviewed the record and considered the arguments of all parties, this Court finds that Defendants' motion must be **GRANTED**.

### II. Statement of Facts and Procedural History

On April 18, 2011, Defendant Boyd S. Faircloth was injured in a dog attack on the property of Defendants Tony and Michelle Elliot. Following the incident, a Berkeley County, West Virginia Animal Control Officer determined a dog named Diver was the aggressor in the incident and removed Diver from the Elliots. The officer further determined that Diver,

who was owned by Tony Elliot's father, Allen W. Elliot, Sr., was a mixed breed American Pit Bull Terrier.

At the time of the incident, Tony and Michelle Elliot's property was insured under a homeowner's policy issued by Plaintiff Nationwide Mutual Fire Insurance Company. After the Elliots notified Nationwide of the incident, Nationwide's claim representative Lori Fallon interviewed Tony Elliot, Michelle Elliot, and Allen Elliot, Sr., on April 20, 2011. Each confirmed that Diver had attacked Mr. Faircloth and caused him injury. The Elliots also vaguely mentioned that another dog, a hound mix named Holly, was present at the scene, but did not elaborate upon Holly's level of involvement in the attack. Because the Elliots revealed that Diver was a mixed breed pit bull, on April 21, 2011, Nationwide issued a "reservation of rights" letter to Tony and Michelle Elliot, informing them that if Diver was a mixed breed pit bull, coverage would be excluded pursuant to a pit bull exclusion in the Elliots' homeowner's policy.[1]

Subsequently, DNA testing confirmed Diver was a mixed breed pit bull. Therefore, on May 6, 2011, Nationwide issued a denial of coverage.

On November 17, 2011, counsel for Mr. Faircloth sent Nationwide a demand letter requesting that Nationwide reconsider its denial of coverage. In response, Nationwide filed a declaratory judgment action regarding whether coverage existed under the policy for any damages caused by Diver.

---

[1] This Court's initial Order Granting Defendants' Motion to Revise Order [Doc. 80] inadvertently stated that Nationwide issued a reservation of rights to the Elliots "on April 21, 2013." This Order has been amended to reflect the fact that Nationwide actually issued its reservation of rights on April 21, 2011.

2

In the Elliots' February 1, 2012 Answer to the Complaint for Declaratory Judgment, they alleged that Holly may have been involved in the attack on Mr. Faircloth. Nationwide asserts that upon receiving this information, it reopened its investigation, confirmed Holly was not an excluded dog under the Elliots' policy, and began negotiating to settle Mr. Faircloth's personal injury claims.

On April 20, 2012, Nationwide reached a settlement with Mr. Faircloth for the sum of $30,000.00. The release executed by Mr. Faircloth provided that:

> This compensation is not for injuries or damages caused by Diver, as it is an excluded breed of dog. However, in exchange for this compensation, it is our agreement that no additional action will be sought against Tony and Michelle Elliot and Allen W. Elliot, Sr., and that this is a full and final release of all claims related to the loss that occurred on 4-18-11 regardless of which dog caused any injuries or damages.

On April 4, 2012, the Elliots filed an Amended Answer to the Complaint for Declaratory Judgment in which they included a counterclaim against Nationwide. In their counterclaim, the Elliots alleged that Nationwide failed to properly investigate the claim, to defend and indemnify the Elliots, and to extend coverage to Mr. Faircloth. The Elliots further alleged that through this failure, Nationwide breached its contractual obligations to the Elliots, breached its duty of good faith and fair dealing, and violated West Virginia's Unfair Claims Settlement Law. The Elliots alleged that they were entitled to recover damages resulting from Nationwide's breaches, including all compensatory and other contractual damages, reasonable attorney's fees, damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience and, to the extent that Nationwide acted maliciously, to punitive damages.

The Elliots and Nationwide filed cross-motions for summary judgment. The Elliots

sought partial summary judgment with regard to their *Hayseeds* claim. Nationwide sought summary judgment on its declaratory judgment action—that it did not owe any coverage for injuries caused by Diver because of the pit bull exclusion contained within the Elliots' policy. On November 9, 2012, this Court entered an Order denying both motions. The Court found Nationwide's motion to be moot in light of the parties' settlement, and with regard to the Elliots' motion, the Court found a material question of fact to exist as to whether or not Nationwide's investigation of Mr. Faircloth's claim was reasonable based upon all available information. Specifically, the Court found that:

> Viewed in the totality, in the light most favorable to Nationwide, the Court cannot conclude that Nationwide's failure to investigate Holly's potential involvement was unreasonable any more than the Court can say that it was reasonable. There was testimony that Holly was present at the scene, which one might reasonably argue should have put Nationwide on notice of Holly's potential involvement, but aside from a letter submitted by Mr. Faircloth's attorney, there was no direct testimony that Holly bit Mr. Faircloth, as there was with regard to Diver.
>
> . . .
>
> If a fact-finder were to determine that Nationwide's initial investigation of this matter was reasonable based upon all available information, that is to say, that it was reasonable for Nationwide not to suspect any potential involvement by Holly until Nationwide received notice through the Defendants' Answer and counterclaim, then Nationwide's initial denial of Mr. Faircloth's claim was not a denial as to Holly, and the Defendants cannot be said to have "substantially prevailed" in their counterclaim against Nationwide based upon that denial. After all, Nationwide settled Mr. Faircloth's claim shortly after the Defendants filed their Answer, specifically stating that "[t]his compensation is not for injuries or damages caused by Diver, as it is an excluded breed of dog."
>
> If, on the other hand, a fact-finder were to determine that Nationwide's initial investigation of this matter was not

4

> reasonable based upon all available information, that is to say, that Nationwide should have been aware of Holly's potential involvement, but nevertheless denied Mr. Faircloth's claim until the Defendants were forced to hire counsel and file a counterclaim to Nationwide's declaratory judgment action, then the Defendants would be able to assert a prima facie case for attorney's fees and costs pursuant to **Hayseeds** and its progeny. The Defendants could be said to have "substantially prevailed" in such a case because the action was settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action.

On March 5, 2013, the Elliots filed the instant motion for reconsideration, moving the Court to reconsider its prior Order to the extent that it denied partial summary judgment to the Elliots. On April 12, 2013, Nationwide filed a response opposing the Elliots' motion. On April 19, 2013, the Elliots filed a reply. On May 3, 2013, this Court conducted a hearing. This matter is now ripe for adjudication.

### III. <u>Standard for Reconsideration</u>

Rule 54(b) provides that Courts may revise interlocutory orders "at any time before the entry of a judgment." **FED. R. CIV. P. 54(b)**. *See also* **Boyd v. Coventry Health Care, Inc.**, 828 F. Supp. 2d 809, 813 (D. Md. 2011) (citing **Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 12 (1983)). "In view of this discretion, '[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment.'" **Boyd**, *supra*, at 814 (citing **Am. Canoe Ass'n v. Murphy Farms, Inc.**, 326 F.3d 505, 514-15 (4th Cir. 2003)). "Nevertheless, 'doctrines such as law of the case . . . have evolved as a means of guiding' district courts' discretion to reconsider interlocutory orders." **Id.** (citing **Am. Canoe Ass'n**, 326 F.3d at 514-15). "The law of the case doctrine dictates that courts must follow the law that a prior

5

decision establishes unless '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" ***Id.*** (citing ***Sejman v. Warner-Lambert Co., Inc.***, 845 F.2d 66, 69 (4th Cir. 1988)). "Albeit omnipresent, the law of the case doctrine cannot positively prohibit a district court from reconsidering an interlocutory order in light of federal courts' 'ultimate responsibility . . . to reach the correct judgment under law.'" ***Id.*** (citing ***Am. Canoe Ass'n***, 326 F.3d at 514-15). "Yet 'concerns of finality and judicial economy' may temper this responsibility." ***Id.*** "Therefore, relief is rarely ever appropriate '[w]hen the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to change its mind.'" ***Id.*** (citing ***Pritchard v. Wal-Mart Stores, Inc.***, 3 Fed. Appx. 52, 53 (4th Cir. 2001)).

## IV. <u>Discussion</u>

In their motion for reconsideration, the Elliots argue that new evidence has come to light which clearly demonstrates Nationwide's failure to conduct a good-faith investigation of Mr. Faircloth's claim. Specifically, the Elliots assert that evidence newly produced by Nationwide on or about March 29, 2013, includes medical records dating back to the date of injury. One of these records, an ambulance record produced by the Berkeley County, West Virginia Ambulance Authority, states the following in its narrative section:

> Patient was walking up to friends house, when friends ***dogs*** came outside and attacked him. ***The two dogs*** dragged him to the ground. ***The pitbull*** grabbed his right wrist and hand and tore skin, ***the small coon dog*** grabbed his face.

(Emphasis added).

6

A second medical record, produced at City Hospital in Martinsburg, West Virginia on the date of injury, states the following in its narrative section:

> This is a 79-year-old male who walked over to a friend's house and knocked on the door. The patient's son answered, if I understand him correctly, and with him were **two dogs** inside the house, one of whom looked classically like a pit bull and one of which was very similar. Both of these were very large dogs. **They both immediately attacked** this patient and knocked him down. He fell backward, landing on his rear end, and then fell back and struck his head on concrete. He did not lose consciousness but it did slow him down enough to where both dogs were upon him before he could react. **One dog** had him by his right wrist and would not let go and had that extremity incapacitated. **The other dog** appeared to be going for the patient's face. He caught that dog by the throat and was barely able to avoid getting more than some very superficial lacerations to his face. He did attempt to choke that dog but he only had one hand with which to do it. I am not quite certain how long the struggle lasted but the owner of the dogs was unable to get the dogs off the patient. It is unclear how the patient ever got free.

(Emphasis added).

A third medical record is dated two days after the date of injury. It is unclear where this record was produced, but it is signed by a Dr. Troy D. Foster, D.O., and it states in its "History" section that:

> This is a pleasant 70-year-old male. Unfortunately for him, **he was attacked by 2 dogs** on 4/18/2011. Came into my office today for definitive care.

(Emphasis added).

The Elliots argue that a reasonable investigation by Nationwide would have produced these records and would have made Nationwide's duty to Mr. Faircloth, pursuant to its insurance policy with the Elliots, clear. The Elliots argue that the failure by Nationwide

7

to conduct such an investigation prior to denying Mr. Faircloth's claim and then filing a declaratory judgment action in this Court entitles the Elliots to *Hayseeds* damages.

Nationwide counters that it did not obtain the aforementioned medical records until February of 2012, after the Elliots filed their answer to Nationwide's declaratory judgment complaint and alleged that Holly had also been involved. Nationwide maintains that at the time of its initial denial of Mr. Faircloth's claim, it relied on three statements from members of the Elliot family, none of whom specifically inculpated Holly, and records from animal control officers, who only quarantined Diver, in reaching its determination that no coverage existed under the Elliots' policy pursuant to the pit bull exclusion. Nationwide indicates that at one point an adjuster had intended to meet with Mr. Faircloth, but the interview ultimately did not take place because in the interim Nationwide made its determination as to coverage. It is Nationwide's position that once it had determined that no coverage existed, it was unnecessary for Nationwide to obtain victim interviews, medical records, etc., because there was no need to determine the value of Mr. Faircloth's claim.

In *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73 (W. Va. 1986), the West Virginia Supreme Court of Appeals held that "[w]henever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorney's fees in vindicating its claim; [and] (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." *Id.* at Syllabus Pt. 1.

> The question of whether an insured has substantially prevailed against his insurance company . . . is determined by the status of the negotiations between the insured and the insurer prior to the institution of the lawsuit. Where the insurance company

> has offered an amount materially below the damage estimates submitted by the insured, and the jury awards the insured an amount approximating the insured's damage estimates, the insured has substantially prevailed.

Syllabus Pt. 2, ***Thomas v. State Farm Mut. Auto. Ins. Co.***, 383 S.E.2d 786 (W. Va. 1989). "An insured 'substantially prevails' . . . against his or her insurer when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such amount." Syllabus Pt. 1, ***Jordan v. Nat'l Grange Mut. Ins. Co.***, 393 S.E.2d 647 (W. Va. 1990).

"***Hayseeds*** announced a 'bright line standard' for the insured's recovery of reasonable attorney's fees and other compensatory damages from his or her insurer, so that the insurer's 'good faith' or other 'justification' for the undue delay in payment is not relevant and does not bar the recovery of such fees." ***Jordan***, 393 S.E.2d at 652 (citations omitted). However, "the insured must show that but for his or her attorney's services such settlement would not have been reached, in light of the undue delay in investigating the claim." ***Jordan***, 393 S.E.2d at 652.

***Hayseeds*** has been expanded to apply to all first party insurance claims. ***Hadorn v. Shea***, 456 S.E.2d 194, 196 (W. Va. 1995) (citing ***Marshall & Marshall v. Saseen & Erie Ins. Co.***, 450 S.E.2d 791 (W. Va. 1994)). Pursuant to ***Hayseeds***:

> An insurance carrier has a duty, once a first-party policyholder has submitted proof of a loss, to promptly conduct a reasonable investigation of the policyholder's loss based upon all available information. On the basis of that investigation, if liability to the policyholder has become reasonably clear, the insurance carrier must make a prompt, fair and equitable settlement offer. If the circuit court finds evidence that the

9

> insurance carrier has failed to properly or promptly investigate the policyholder's claim, then the circuit court may consider that evidence in determining whether the policyholder has substantially prevailed in an action to enforce the insurance contract.

Syllabus Pt. 3, **Miller v. Fluharty**, 500 S.E.2d 310 (W. Va. 1997).

The Court's previous Order in this case was premised on the Court's finding that it was unclear, based upon the three statements from members of the Elliot family and one vague reference to "dogs" in a November 17, 2011 letter from Mr. Faircloth's attorney, whether or not Nationwide's investigation of this matter was reasonable based upon all available information, as contemplated in **Fluharty**. In light of the new facts which have arisen, it is clear to the Court that Nationwide's investigation of Mr. Faircloth's case was not reasonable. A prudent claims adjuster would have, at a minimum, interviewed the claimant and reviewed the pertinent medical records. Nationwide argues that it had no duty to so investigate once it had reached the determination that it owed no coverage under the policy. However, if Nationwide had so investigated, then it would have been abundantly clear to Nationwide that it did, indeed, owe coverage under the policy. The Court thus **FINDS** as a matter of law that the Elliots have substantially prevailed in their claim against Nationwide.

However, Nationwide argues that the doctrines established in **Hayseeds** and its progeny cease to apply once a claim is resolved. According to Nationwide, "**Hayseeds** does not provide for attorney's fees incurred in litigation following settlement and, in particular, does not provide for attorney's fees incurred in any bad faith claims asserted by the insured." Nationwide does not cite any authority in support of this proposition.

To the contrary, in Syllabus Point 2 of **Aetna Cas. & Sur. Co. v. Pitrolo**, 342 S.E.2d 156 (W. Va. 1986), the West Virginia Supreme Court of Appeals held that "[w]here a declaratory judgment action is filed to determine whether an insurer has a duty to defend its insured under its policy, if the insurer is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment litigation." In the instant case, the Elliots' counterclaim for **Hayseeds** damages was filed as part of the declaratory judgment litigation initiated by Nationwide.

Furthermore, the West Virginia Supreme Court of Appeals has held that "a first-party suit based on **Hayseeds** will not be barred by the settlement of the loss . . . if the insured substantially prevailed." Syllabus Pt. 6, **Smithson v. U.S. Fidelity & Guar. Co.**, 411 S.E.2d 850 (W. Va. 1991). In **Smithson**, a plaintiff's truck was destroyed in a gas well explosion. *Id.* at 853. The plaintiff and his insurer could not agree on the amount of damages, and, pursuant to the insurance contract, the parties submitted the loss to a third-party appraisal proceeding. *Id.* The plaintiff hired an attorney to assist him in the process. *Id.* That process resulted in a damage appraisal of $67,000, an amount exceeding the plaintiff's $60,000 policy limit. *Id.* The insurance company paid the plaintiff up to the $60,000 policy limit, and the plaintiff then brought a bad faith action against the insurer. *Id.* at 853-54. The jury awarded the plaintiff $95,833 based on alleged economic loss. *Id.* On appeal, the Supreme Court of Appeals found the economic loss verdict to be unsupported. *Id.* at 862. However, the Court held that:

> We conclude that while the plaintiff failed to prove any net economic loss, he can recover attorney's fees incurred during the successful appraisal proceeding. These fees were $15,000. The trial court should also award plaintiff

> prejudgment interest from the date of the loss until the policy proceeds were paid. In addition, once these amounts are calculated, they will represent the losses authorized by *Hayseeds*, and, as indicated in *Hayseeds*, an additional one-third attorney's fees would be proper in pursuing this first-party claim in the court below.

*Id.* at 862. The Court also held in that case that "if an insurer could utilize the appraisal process to shield itself from the consequences of failing to make a reasonable settlement offer on a fire loss, it would defeat the principles involved in [*Hayseeds*] and its progeny." *Id.* at 857. The Court concludes from this that under West Virginia's *Hayseeds* doctrine, settlement does not cut off *Hayseeds* damages and Nationwide remains liable until such time as it makes the Elliots whole.

Accordingly, the Court **FINDS** that the fact that Nationwide ultimately settled Mr. Faircloth's claim in this case does not preclude the Elliots from bringing a claim against Nationwide pursuant to *Hayseeds* for having had to hire attorneys to defend against Nationwide's declaratory judgment action, and the Court furthermore **FINDS** that the Elliots have substantially prevailed in their claim and are therefore entitled to *Hayseeds* damages.

## V. Conclusion

For the foregoing reasons, the Court **FINDS** that the Elliots' Motion to Revise Order **[Doc. 61]** must be **GRANTED**, and the Court's Order of November 9, 2012 **[Doc. 49]** must be **VACATED** and **MODIFIED** to the extent indicated in this Order.

On **August 13, 2013**, at **9:30 a.m.**, the Court will conduct a hearing with regard to damages. The Elliots are to brief the damages they are seeking by **July 15, 2013**. Nationwide shall file any objections by **July 29, 2013**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to all counsel of record and/or *pro se* parties. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

**DATED**: August 14, 2013.

GINA M. GROH
UNITED STATES DISTRICT JUDGE