IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**NATIONWIDE MUTUAL FIRE**
**INSURANCE COMPANY,**

      Plaintiff,

v.                                        CIVIL ACTION NO. 3:12-CV-4
                                              (JUDGE GROH)

**BOYD S. FAIRCLOTH;**
**TONY M. ELLIOT;**
**MICHELLE J. ELLIOT; and**
**ALLEN W. ELLIOT, SR.,**

      Defendants.

## ORDER REGARDING *HAYSEEDS* DAMAGES

### I. Introduction

On August 13, 2013, the parties to the above-styled action appeared before the Court for a damages hearing. Defendants Tony M. Elliot and Michelle J. Elliot appeared in person and by their counsel, Wm. Richard McCune, Jr. and Alex A. Tsiatsos. Plaintiff Nationwide was represented by its counsel, Tammy R. Harvey. Having reviewed the record and considered the arguments of the parties, the Court concludes that Tony and Michelle Elliot may recover damages for their reasonable attorney's fees and for net economic loss caused by Nationwide's delay in settling the Elliots' claim.

### II. Statement of Facts and Procedural History

On June 20, 2013, this Court entered an Order finding that the Elliots had substantially prevailed in their counterclaim to Nationwide's declaratory judgment complaint and were thus entitled to damages under the doctrine of West Virginia law established in

***Hayseeds, Inc. v. State Farm Fire & Cas.***, 352 S.E.2d 73 (W. Va. 1986). This holding was based upon the Court's finding that Nationwide's investigation of a dog-bite incident which occurred on the Elliots' property was unreasonable and that Nationwide's denial of Defendant Boyd S. Faircloth's claim against the Elliots' homeowner's insurance policy was thus improper. *See* Syl. Pt. 3, ***Miller v. Fluharty***, 500 S.E.2d 310 (W. Va. 1997).

In line with this finding, the Court must now consider the issue of what damages the Elliots should be awarded. On July 15, 2013, the Elliots filed a brief regarding the damages they are seeking [Doc. 83]. On August 1, 2013, Nationwide filed a response [Doc. 86], and on August 8, 2013, the Elliots filed a reply [Doc. 88]. The Court, having reviewed the record and considered the arguments of all parties, hereby finds as follows:

### III. Damages Standard

In ***Hayseeds***, the West Virginia Supreme Court of Appeals held that: "[w]henever a policyholder substantially prevails in a . . . suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorney's fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." Syl. Pt. 1, ***Hayseeds***, 352 S.E.2d 73. The Supreme Court of Appeals furthermore held that "[p]resumptively, reasonable attorney's fees in this type of case are one-third of the face amount of the policy, unless the policy is either extremely small or enormously large." ***Id.*** at 80.

"When a policyholder substantially prevails on a first-party insurance claim against an insurer and becomes entitled to reasonable attorney's fees under [***Hayseeds***] and its progeny, the amount of the attorney's fee is to be determined by the . . . judge and not by

a jury." Syl. Pt. 3, *Richardson v. Ky. Nat. Ins. Co.*, 607 S.E.2d 793 (W. Va. 2004). "The means that a . . . judge uses to calculate a reasonable attorney's fee is a matter left to the judge's discretion." Syl. Pt. 5, *Id.* "A . . . judge, in calculating a reasonable attorney's fee under [*Hayseeds*], should look at the negotiations between the policyholder and the insurance company as a whole from the time of the insured event to the final payment of the insurance proceeds." Syl. Pt. 6, *Id.* The West Virginia Supreme Court of Appeals reiterated in *Richardson* that "a reasonable attorney's fee is presumptively one-third of the face amount of the policy, unless the amount disputed under the policy is either extremely small or enormously large." Syl. Pt. 5, *Id.* In these latter circumstances, a judge should conduct an inquiry concerning a reasonable attorney's fee. *Id.* "[W]hen a policyholder with a valid claim is compelled by an insurance company to expend significant attorney effort to recover a 'small' amount of coverage under a policy, the policyholder will . . . be able to shift the entire attorney's fee onto the insurance company, if the entire amount of the attorney's fee is found to be reasonable by a trial judge applying the factors set out in Syllabus Point 4 of *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156 (W. Va. 1986)." *Richardson*, 607 S.E.2d at 801 n.7.

In situations where a court must conduct such an inquiry, it should consider the following factors originally annunciated in *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156 (W. Va. 1986) (hereinafter "the *Pitrolo* factors"): (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the limitations

imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Syl. Pt. 7, **Richardson**, 607 S.E.2d 793.

## IV. Discussion

### A. The Plaintiff's claims based upon the West Virginia UTPA and common law bad faith remain pending.

In their counterclaim to Nationwide's declaratory judgment complaint, the Elliots alleged, in addition to their **Hayseeds** claim, that Nationwide's denial of coverage and defense, failure to investigate properly, and failure to settle in good faith violated Nationwide's duties under the West Virginia Unfair Trade Practices Act ("UTPA"), W. Va. Code § 33-11-4, *et seq.*, as well as constituting common law bad faith. *See, e.g.,* **Jenkins v. J.C. Penney Cas. Ins. Co.**, 280 S.E.2d 252 (W. Va. 1981), *overruled on other grounds*, **State ex rel. State Farm Fire & Cas. Co. v. Madden**, 451 S.E.2d 721 (W. Va. 1994); **Dodrill v. Nationwide Mut. Ins. Co.**, 491 S.E.2d 1 (W. Va. 1996).

In their motion for damages, the Elliots assert that they reserve the right to seek UTPA damages. The Elliots' UTPA claims have not been litigated thus far and are not at issue for purposes of this decision. This Order pertains solely to the Elliots' **Hayseeds** claim and its attendant damages. Any and all other claims survive this Order and remain pending.

**B. The Court declines to stay this case or certify questions to the West Virginia Supreme Court of Appeals.**

Nationwide argues that the following two questions constitute matters of first impression under West Virginia law which should be certified to the West Virginia Supreme Court of Appeals:

1. Is an insurance company responsible for attorney's fees incurred by its insured in pursuing damages under *Hayseeds* after the underlying claim has been resolved?

2. Is an insurance company responsible for attorney's fees incurred by its insured in pursuing a claim under the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-1, *et seq.*[?]

The Court does not find certification of either question to be necessary or appropriate. As this Court has previously determined, West Virginia law permits a party to pursue a *Hayseeds* claim against an insurer after settlement of the underlying claim. *See, e.g.,* Syl. Pt. 6, **Smithson v. U.S. Fidelity & Guar. Co.**, 411 S.E.2d 850 (W. Va. 1991) ("a first-party suit based on *Hayseeds* will not be barred by the settlement of the loss . . . if the insured substantially prevailed.").

Moreover, no attorney's fees being sought by the Elliots or considered by this Court are for any alleged violation of the UTPA.

The Court likewise rejects Nationwide's motion to stay this case pending an anticipated decision by the West Virginia Supreme Court of Appeals which Nationwide asserts is relevant to the Court's consideration of this case. The Court has reviewed the briefing in the above-referenced case, **Lemasters v. Nationwide Mut. Ins. Co.**, currently pending before the West Virginia Supreme Court of Appeals as Case No. 12-0774, and finds it to be inapposite.

In *Lemasters*, the insureds sued their insurer for failure to provide coverage under an underinsured motorist ("UIM") policy, ultimately settled with the insurer for the policy limits of the applicable policy, and then amended their complaint to bring a bad faith action against the insurer. The bad faith action was tried before a jury and resulted in a verdict for the insureds. The issue in *Lemasters* is whether or not the insureds may recover *Hayseeds* attorney's fees for "efforts to collect" *Hayseeds* damages after settlement on the policy but during the pendency of the related bad faith action.

In the instant case the Elliots' bad faith claims have yet to be tried. All litigation to this point has focused on the Elliots' *Hayseeds* claims, and the damages awarded in this Order are solely for that purpose. Therefore, Nationwide's motions to certify questions and/or stay this case are hereby **DENIED**.

    **C.    The Elliots are entitled to reasonable attorney's fees plus their net economic losses.**

        **1.    Attorney's Fees**

This Court has previously found that the Elliots have substantially prevailed in their *Hayseeds* claim against Nationwide as a matter of law. *See* [Doc. 80]. The Elliots argue that pursuant to *Hayseeds*, they are presumptively entitled to attorney's fees in the amount of one-third of the face amount of the applicable policy. The face amount of the liability policy in this case is $300,000. Therefore, the Elliots argue that they are entitled to $100,000 in attorney's fees.

Nationwide, on the other hand, argues that the Elliots' recovery of attorney's fees should be limited to reasonable attorney's fees incurred in the vindication of their claim under the policy, which Nationwide asserts to be one-third of $30,000, the amount of

Nationwide's ultimate settlement with the Elliots. Nationwide alternatively argues that the Court should apply the *Pitrolo* factors in order to determine what would constitute a reasonable attorney's fee.

*Hayseeds* involved a business premises which suffered substantial fire damage, resulting in a claim for the policy limits of the applicable policy in that case, which was $150,000. *Hayseeds*, 352 S.E.2d at 74-76. The insurance carrier in that case refused the plaintiffs' claim, prompting suit, and a jury returned a verdict for, *inter alia*, $150,000 on the insurance policy. *Id.* at 75-76. The insurance carrier appealed the verdict, and it was in this context that the West Virginia Supreme Court of Appeals held that "whenever a policyholder must sue his own insurance company over any property damage claim, and the policyholder substantially prevails in the action, the company is liable for the payment of the policyholder's reasonable attorney's fees." *Id.* at 80.

As the Elliots observe, the *Hayseeds* Court held that "[p]resumptively, reasonable attorney's fees in this type of case are one-third of the face amount of the policy, unless the policy is either extremely small or enormously large." *Id.* The Court's rationale for this holding was that it "follows from the contingent nature of most representation of this sort and the fact that the standard contingent fee is 33 percent." *Id.* Using numbers that were applicable in 1986, the Court cautioned that "when a claim is for under $20,000 or for over $1,000,000," the trial court should inquire about the reasonableness of the attorney's fees. *Id.*

*Miller v. Fluharty*, 500 S.E.2d 310 (W. Va. 1997), involved a plaintiff who was a front-seat passenger in an automobile driven by the defendant's 17-year-old son when the

defendant's son lost control of the subject automobile and resulted in a serious wreck. *Fluharty*, 500 S.E.2d at 314. Two applicable insurance policies were involved, and both were issued by the same insurer. *Id.* The first was an automobile liability policy purchased by the defendant's family. *Id.* The second was an underinsured motorist policy purchased by the plaintiff's family. *Id.* The insurer paid the policy limits of the defendant's automobile liability policy, but the plaintiff's underinsured motorist policy had to be litigated. *Id.* at 314-17. The plaintiff ultimately settled with the insurer for the policy limits of the underinsured motorist policy, one hundred thousand dollars, and then brought a *Hayseeds* action against the insurer. *Id.* at 317. A West Virginia trial court found that the insurer "refused or failed" to evaluate the plaintiff's underinsured motorist claim, and ordered the insurer to pay the plaintiff $33,333.00 in attorney's fees, or one-third of the face value of the applicable policy. *Id.* The West Virginia Supreme Court of Appeals affirmed the trial court. *Id.* at 324.

In *Richardson v. Kentucky Nat. Ins. Co.*, an insurer issued a personal property insurance policy to an insured with a face value of $7,500. 607 S.E.2d at 796. The plaintiff's home subsequently burned down, and the plaintiff sought coverage under the policy for the loss of her personal property. *Id.* at 797. The insurer initially refused the claim, prompting the plaintiff to obtain the services of an attorney and ultimately bring suit. *Id.* A jury awarded the plaintiff the policy limits under the policy at issue, as well as $10,000 in attorney's fees. *Id.* at 798. The insurer appealed. *Id.*

The West Virginia Supreme Court of Appeals in *Richardson* restated and elaborated on its prior holding in *Hayseeds*. Specifically, the Court held that:

> The means that a . . . judge uses to calculate a reasonable attorney's fee is a matter left to the judge's discretion. We

> reiterate our holding in ***Hayseeds***, however, that a reasonable attorney's fee is presumptively one-third of the face amount of the policy, unless ***the amount disputed under the policy*** is either extremely small or enormously large. In these latter circumstances, the judge shall conduct an inquiry concerning a reasonable attorney's fee.
>
> . . .
>
> [A] . . . judge, in calculating a reasonable attorney's fee under ***Hayseeds***, should look at the negotiations between the policyholder and the insurance company as a whole from the time of the insured event to the final payment of the insurance proceeds. The factors for . . . judges to use in calculating a reasonable attorney's fee were set forth by this Court in Syllabus Point 4 of [***Pitrolo***].

*Id.* at 801-02 (emphasis added). Of particular note in the ***Richardson*** decision is Footnote 7, wherein the Supreme Court of Appeals stated:

> We recognize—as Justice Neely recognized in ***Hayseeds*** in 1986—that the phrases "extremely small" or "enormously large" are inherently vague and subject to debate. Still, we choose to adopt the phrases because of the ever-decreasing value of money. Hence, in the future when a policyholder with a valid claim is compelled by an insurance company to expend significant attorney effort to recover a "small" amount of coverage under a policy, the policyholder will still be able to shift the entire attorney's fee onto the insurance company, if the entire amount of the attorney's fee is found to be reasonable by a trial judge applying the factors set out in Syllabus Point 4 of [***Pitrolo***]. Likewise, if a future attorney's efforts recover an "enormously large" amount of coverage for a policyholder, the attorney's fee will be limited to that which is conscionable and in accord with the risk and effort undertaken by the attorney.

*Id.* at 801 n.7.

***Richardson*** is directly applicable to the issue *sub judice* and demonstrates clearly how the ***Hayseeds*** doctrine is to be applied to cases which do not implicate the policy limits

9

of a particular policy. In this case, the claim at issue was worth $30,000—only a fraction of the total policy coverage limits of $300,000. This case thus clearly constitutes a situation where "a policyholder with a valid claim is compelled by an insurance company to expend significant attorney effort to recover a 'small' amount of coverage under a policy." *See id.* **Richardson** instructs that in such a case an attorney's fee is to be calculated by considering the **Pitrolo** factors. Accordingly, this Court will next proceed to apply the **Pitrolo** factors to this case.

The first **Pitrolo** factor is the time and labor required. The Elliots' counsel assert that they have expended considerable time and effort on this litigation. This assertion is supported by counsel's billing records, which reflect over three hundred total hours of work on this case.

The second **Pitrolo** factor is the novelty and difficulty of the questions. The Elliots' counsel assert that this case required amended pleadings and considerable motion practice, and that while the questions raised were not novel, Nationwide made the matter difficult. Counsel assert that they conducted discovery, retained an expert, and took the extraordinary step of successfully moving this Court to revise a previous order.

The third **Pitrolo** factor is the skill requisite to perform the legal service properly. The Elliots' counsel assert that it took skill to litigate the issues in this case.

The fourth **Pitrolo** factor is the preclusion of other employment by the attorney due to acceptance of the case. Counsel McCune for the Elliots asserts that he has traditionally been hired by insurance companies to represent their insureds as defendants, and that to the extent he represents clients adverse to a major insurer such as Nationwide, insurance

companies could be less likely to hire him for insurance defense work.

The fifth *Pitrolo* factor is the customary fee. The Elliots' counsel represent that the fixed hourly rates reflected in their billing are reasonable in light of their experience and the general local rates with which the Court is familiar. The Court also takes note of Counsel McCune's long-standing reputation among the local bar for effective and diligent representation, which relates to the reasonableness of the fee charged.

The sixth *Pitrolo* factor is whether the fee is fixed or contingent. The fee in this case was fixed, but as this Court has already found, the hourly rates were reasonable.

The seventh *Pitrolo* factor is any time limitations imposed by the client or the circumstances. The Elliots' counsel assert that the Elliots came to them having been served with a motion for declaratory judgment and needing representation immediately. Counsel assert that they accepted the litigation, prepared an answer, and assumed the defense in a timely manner.

The eighth *Pitrolo* factor is the amount involved and the results obtained. The Elliots' counsel assert that the amount involved has been substantial to the Elliots—both in terms of the underlying settlement amount and the fees subsequently expended.

The ninth *Pitrolo* factor is the experience, reputation, and ability of the attorneys. The Court has already noted the high regard in which Counsel McCune is held in the local legal community. In addition, Counsel Tsiatsos is a competent and skilled attorney.

The tenth *Pitrolo* factor is the undesirability of the case. The Elliots' counsel assert that this case was not particularly desirable, although it is not known whether other local attorneys would have been willing or able to take the case and obtain the same result.

The eleventh *Pitrolo* factor is the nature and length of the professional relationship with the client. The Elliots' counsel assert that they did not have a prior relationship with the Elliots.

The twelfth *Pitrolo* factor is awards in similar cases. This Court has previously conducted an analysis of pertinent case law and determined that this case is distinguishable from other cases cited by the Elliots which involved a claim for the policy limits of a particular policy. This case did not involve a claim for the policy limits of the Elliots' policy, and *Richardson* instructs that this Court should determine the Elliots' reasonable attorney's fees based upon a consideration of the above-mentioned factors.

Having considered the factors delineated in *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d at 162, and having furthermore reviewed the Elliots' counsel's statement of legal fees and costs [Doc. 93-1], the Court finds the statement of legal fees and costs to be reasonable. Therefore, the Elliots are hereby awarded $59,867.21 in attorney's fees.

### 2. Net Economic Losses

The second category of *Hayseeds* damages is for net economic loss caused by the delay in settlement. The Elliots allege that they were forced to withdraw considerable sums from their retirement account in order to defend themselves in this lawsuit. They allege that they have incurred approximately $6,100 in penalty fees for early withdrawal from their retirement account. Pursuant to *Hayseeds*, this amount is recoverable. Therefore, the Court hereby awards the Elliots $6,100 in damages for net economic losses caused by Nationwide's delay in settlement.

### 3. Aggravation and Inconvenience

The third category of *Hayseeds* damages is for aggravation and inconvenience. To the extent that the Elliots have not specifically alleged any damages under this category, the Court does not find them to be entitled to any.

### V. Conclusion

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The Elliots' Motion Regarding Damages **[Doc. 83]** is **GRANTED IN PART**, and **DENIED IN PART**. Specifically, Nationwide shall pay the Elliots **$59,867.21** in **Attorney's Fees**. Nationwide shall further pay the Elliots **$6,100.00** in **Net Economic Losses**.

2. Nationwide's Motion to Certify Question to the West Virginia Supreme Court of Appeals **[Doc. 86]** is **DENIED**.

3. Nationwide's Motion to Stay **[Doc. 86]** is **DENIED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** August 29, 2013.

GINA M. GROH
UNITED STATES DISTRICT JUDGE